**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **KEVIN P. DIXON, Deceased, by and through LULA M. DIXON, his Mother, Next Best Friend, and Independent Administrator of the Estate of Kevin P. Dixon,** | **Case No. 09 C 6976** |
| Plaintiff, | Hon. Harry D. Leinenweber |
| v. | |
| **COOK COUNTY, d/b/a CERMAK HEALTH SERVICES, *et al.*,** | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Cook County, d/b/a Cermak Health Services' Motion to Strike the Rule 26(a)(2) report of Plaintiff's retained expert witness, Robert Greifinger, M.D. (hereinafter, "Dr. Greifinger"). For the reasons stated herein, Defendant's Motion is granted in part and denied in part.

**I. BACKGROUND**

On September 5, 2008, Kevin Dixon (the "Decedent") entered the Cook County Department of Corrections as a pre-trial detainee. At this time, Decedent's estate (the "Plaintiff") alleges that Decedent was in good health. In October 2008, Decedent began to experience pain in his stomach, back, and chest. Plaintiff alleges that after Decedent began to experience

pain, Decedent repeatedly requested help from various Defendant Correctional Officers, but Defendants refused to provide Decedent appropriate medical assistance.

On November 12, 2008, Decedent visited a physician and was diagnosed with possible gastroesophageal reflux disease. On November 19, 2008, Decedent appeared in court and a judge ordered Decedent to be seen by physicians at Cermak Hospital. On November 28, 2008, a physicians' assistant (the "PA") evaluated Decedent and diagnosed him with psychosomatic pain. Plaintiff alleges that Decedent's tier-mate filled out many requests for care on behalf of Decedent in November 2008, and further alleges that despite these requests, Defendants failed to respond.

On December 10, 2008, Decedent had a chest x-ray which revealed a paratracehal mass density in his chest. On December 11, 2008, a CT scan was performed and confirmed the presence of a mass in Decedent's chest. On December 23, 2008, Decedent visited the pulmonary clinic at Stroger Hospital of Cook County. During this visit, physicians again confirmed the mass in Decedent's chest. As a result, Decedent was scheduled for a follow-up CT scan on January 2, 2009, and a visit on January 6, 2009.

On or about December 29, 2008, Decedent again experienced pain in his abdomen and leg and complained to various correctional officers that he was constipated and could not get

up. On this date, Decedent was sent to Cermak Hospital's Emergency Room for lack of breathing and pain. On December 30, 2008, Decedent reported two weeks of constipation and reported he was unable to walk. Plaintiff alleges that at this time Decedent was referred to a mental health physician.

On December 31, 2008, Decedent was admitted to Cermak Hospital Infirmary. A physician saw Decedent and completed a Cermak Hospital Consultation Request Form, requesting that Decedent have a pulmonary consultation at Stroger Hospital. Plaintiff alleges on this visit the physician marked it was "RUSH" request.

On January 2, 2009, Decedent had another CT scan which reported similar findings to his prior exams, the presence of a mass in Decedent's chest. On January 5, 2009, Decedent was transported to Stroger Hospital and saw a physician who reported that Decedent had metastasized lung cancer. On March 4, 2009, Decedent died.

On November 5, 2009, Decedent's estate filed suit against Defendant Cook County d/b/a Cermak Health Services as well as other agents of the Cook County Department of Corrections. Plaintiff alleges Defendants violated Decedent's civil rights under 42 U.S.C. § 1983 by failing to provide adequate medical care and alleges intentional infliction of emotional distress.

Defendant Cook County now seeks to strike Plaintiff's Rule 26(a)(2) report of Plaintiff's expert Dr. Robert Greifinger.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 26(a)(2) governs the disclosure of expert testimony. The rule states that parties must disclose the identity of any expert who may be used at trial to present evidence under Federal Rules of Evidence 702, 703, or 705. FED. R. CIV. P. 26(a)(2)(A). Rule 26(a)(2) also requires litigants to provide opposing counsel an accompanying report prepared and signed by the disclosed expert which contains "a complete statement of all opinions the witness will express and the basis and reasons for them; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary or support for the opinions; [and] the qualifications of the witness . . ." FED. R. CIV. P. 26(a)(2)(B).

## III. DISCUSSION

Defendant seeks to strike the Rule 26(a)(2) report of Plaintiff's expert Robert Greifinger, M.D. Defendant alleges that Dr. Greifinger's report should be struck because his opinions are unreliable and conclusory. Defendant specifically takes issue with Dr. Greifinger's use of the phrase "deliberate indifference," in his report, arguing that such a phrase is a legal term to be defined by the Court. Def.'s Mot. to Strike the Rule 26(a)(2) report of Robert Greifinger, M.D. at 6. Plaintiff

responds that Dr. Greifinger is qualified to render opinions regarding the policies and procedures concerning the custodial medical care at the Cook County Department of Corrections because of Dr. Greifinger's extensive experience, and argues that his use of the term "deliberate indifference" does not amount to a legal conclusion.

At the outset, the Court finds Defendant's motion confusing. In its motion, Defendant seeks to strike Dr. Greifinger's Rule 26(a)(2) report, yet in support of such motion Defendant directs this Court to case law handling motions *in limine* and motions to strike and exclude testimony. The Court is unsure if Defendant actually seeks to strike Dr. Greifinger as an expert witness or strike his proposed testimony. However, it is not a function of the Court to organize or form a party's motions or arguments. *See United States v. McClellan*, 165 F.3d 535, 550 (7th Cir. 1999). Because of this, the Court only will rule on the exclusion of Dr. Greifinger's Rule 26(a)(2) report.

Trial courts have broad discretion under Federal Rule of Evidence 702 to admit or exclude expert testimony. *United States v. Smith*, 869 F.2d 348, 351 (7th Cir. 1989). Rule 702 and the Supreme Court's opinion in *Daubert v. Merrell Dow Pharmaceuticals, Inc.* govern the admissibility of expert testimony. Fed. R. Evid. 702; *Daubert v. Merrell Dow*

*Pharmaceuticals*, 509 U.S. 579 (1993). *Daubert* provides a three-step analysis for district courts to consider in determining whether the proffered expert testimony is both relevant and reliable. *Ervin v. Johnson & Johnson*, 492 F.3d 901, 904 (7th Cir. 2007). *Daubert* instructs district courts to determine (1) whether the witness is qualified as an expert "by knowledge, skill, experience, training or education"; (2) whether the theory [the expert is relying on] "has been subjected to peer review and publication"; and (3) whether the theory is "generally accepted in the scientific community." *Daubert*, 509 U.S. at 593-94.

The Seventh Circuit has noted that while *Daubert* provides a list of factors to be considered "when evaluating the admissibility of expert testimony - including testing, peer review, error rates, and acceptability within the relevant professional community - these factors do not establish a definitive checklist." *United States v. Cruz-Velasco*, 224 F.3d 654, 660 (7th Cir. 2000). Moreover, the Seventh Circuit has recognized that the *Daubert* opinion was limited to scientific testimony and that "while extensive academic and practical expertise in an area is certainly sufficient to qualify a potential witness as an expert, Rule 702 specifically contemplates the admission of testimony by experts whose knowledge is based on experience." *United States v. Parra*, 402

F.3d 752, 758 (7th Cir. 2005). As such, the Seventh Circuit "consider[s] a proposed expert's full range of practical experience as well as academic or technical training when determining whether that expert is qualified to render an opinion in a given area." *Trustees of Chi. Painters and Decorators Pension v. Royal Intern. Drywall and Decorating*, Inc., 493 F.3d 782, 787-88 (7th Cir. 2007).

### A. Dr. Greifinger's Qualifications

After reviewing Dr. Greifinger's report and deposition, the Court finds that both Dr. Greifinger's education and experience in the field of correctional medicine qualifies him as an expert in this case. *See* Def.'s Mot. to Strike Rule 26 (a)(2) Report of Greifinger, Ex. 3 at 1. The Court specifically refers to Dr. Greifinger's 20 years of experience as a physician practicing correctional medicine, and his experience as the Chief Medical Officer for the New York State Department of Correctional Services.

### B. The Reliability of Dr. Greifinger's 26(a)(2) Report

The Court next turns to Defendant's contention that Dr. Greifinger's opinions should be struck because his opinions amount to legal conclusions, and therefore are unreliable. Defendant alleges that Dr. Greifinger's report lacks a basis for his opinions and conclusions. Defendant further argues that Dr.

Greifinger's use of the phrase "deliberate indifference" amounts to an impermissible legal conclusion. Plaintiff contends Dr. Greifinger's extensive experience in the field of correctional medical care provides a sufficient basis for his opinions.

"If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why the experience is a sufficient basis for the opinion and how that experience is reliably applied to the fact." FED. R. EVID. 702 advisory committee's notes (2000 amendment). The more subjective and controversial the expert's inquiry, the more likely the testimony should be excluded as unreliable. *See O'Connor v. Commonwealth Edison Co.*, 13 F.3d 1090 (7th Cir. 1994).

In his report, Dr. Greifinger fails to connect his experience, whether it was how he operated a correctional facility or what he observed in other correctional facilities, to his conclusions in his report. As an example, in paragraph 33 of Dr. Greifinger's report he states: "Mr. Dixon's pain was increasing, including 10 out of 10 on December 23, 2008, yet he never received anything stronger than acetaminophen for his pain. Mr. Dixon [Decedent] suffered substantially. This falls far below the standard of correctional health care and was deliberately indifferent to his serious medical needs." Def.'s

Mot. to Strike Rule 26(a)(2) Report of Robert Greifinger, M.D. Ex. 2 at 5. The Court finds this statement, much like the rest of the report, to merely state a fact and then provide a conclusion, without providing any analysis as to how Dr. Greifinger reached such a conclusion.

In the "Opinions and Conclusions" section of his report, Dr. Greifinger repeatedly states that Defendants' actions "fell below the standard of correctional health care." Yet, Dr. Greifinger fails to articulate what the appropriate standard of care is. As such, the Court not only finds this assertion to lack reliability, but also finds it to lack relevancy in a civil rights case like this one and not a medical malpractice case where the standard of care is directly at issue.

"[E]xperts' work is admissible only to the extent it is reasoned, uses the methods of the discipline and is founded on data. Talking off the cuff - deploying neither data nor analysis - is not an acceptable methodology." *Lang v. Kohl's Food Stores*, 217 F.3d 919, 924 (7th Cir. 2004). As such, the Court strikes any and all of Dr. Greifinger's unsupported conclusions in his Rule 26(a)(2) report. Specifically, the Court holds that any reference to Defendants' "falling below the standard of correctional health and care," and Defendants' actions constituting a "deliberate indifference" to Decedent's needs to be struck from Dr. Greifinger's report. (This includes the last

- 9 -

sentence of paragraphs 30, 31, 32, 33, 35, 36, 38, 39, and 40; as well as the last two sentences in paragraphs 34 and 37.) The Court finds the remainder of the report permissible, and reminds Defendant that its holding is narrowly construed to Defendant's motion to strike the Rule 26(a)(2) report. Defendant may find it necessary to file additional motions *in limine* regarding Plaintiff's experts' proposed testimony as trial approaches.

## IV. CONCLUSION

For the reasons stated herein, Defendant's Motion to Strike Dr. Greifinger's Rule 26(a)(2) Report is granted in part and denied in part.

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　　Harry D. Leinenweber, Judge
　　　　　　　　　　　　　　　　　　United States District Court

**DATE:** 9/25/2012